1
2
3
4
5
6
7
8

## UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

11 SERGIO GAVALDON, et al.,

12                                    Plaintiffs,

13

14

15

16

17        vs.

18

19 STANDARD CHARTERED BANK
20 INTERNATIONAL, INC., et al.,

21                                    Defendants.

CASE NO. 16cv590-LAB (MDD)

**ORDER GRANTING JOINT MOTION FOR EXTENSION OF TIME TO ANSWER; AND**

**ORDER GRANTING IN PART MOTION TO DISMISS**

**[DOCKET NOS. 10 & 12.]**

22        This is the third and latest of three related cases involving securities claims connected

23 with the Bernie Madoff investments scandal.  Plaintiffs Sergio and Angelica Gavaldon are

24 individual investors who allege Defendants misled them about investments, causing them

25 to lose money.  Plaintiffs S&A Investments, Inc. and Harley Invest Ltd. are Cayman Island

26 pass-through entities that the Gavaldons formed in order to invest.

27        The earlier two actions were *Stanchart Securities Int'l, Inc. v. Gavaldon*, 12cv2522-

28 LAB (MDD), which sought to enjoin a FINRA arbitration, and *Gavaldon v. Stanchart*

*Securities Int'l, Inc.*, 12cv3016-LAB (MDD), in which the parties respectively sought to vacate or confirm the FINRA arbitration panel's award.  The "award" was actually a determination that FINRA had no jurisdiction to arbitrate the Gavaldons' claims.  The Court declined to advise the Gavaldons where they ought to file their claim next.  (*See* 12cv3016, Docket no. 18 (Order Denying Cross-Motions for Reconsideration) at 2:25–3:19.)  They then filed a complaint in California state court.  Defendant Standard Chartered Bank International (Americas) Ltd. ("SCBI") then removed, citing both diversity jurisdiction and the Edge Act, 12 U.S.C. § 632.  *See Huynh v. Chase Manhattan Bank,* 465 F.3d 992, 997 (9th Cir. 2006) (pointing out that the Edge Act "invests in the federal courts original jurisdiction over cases arising out of foreign banking transactions to which a U.S. corporation is a party").

**Motion for Extension of Time**

The parties jointly moved for an extension of time to file an answer to the complaint. But before the Court ruled on the motion, Defendants filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  (*See* Docket nos. 12 (Motion) and 13 (Joinder by Individual Defendants).)  This had the effect of automatically extending the time to answer. *See* Fed. R. Civ. P. 12(a)(4).  The motion for an extension of time is **GRANTED** and the Motion is accepted as filed.

**Legal Standards**

Defendants filed a motion to dismiss for failure to state a claim, under Fed. R. Civ. P. 12(b)(6).  The motion argues that the claims are time-barred, that the complaint does not state a claim, and that fraud claims do not satisfy Fed. R. Civ. P. 9(b)'s pleading standard.

A motion to dismiss challenges the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The Court must accept all factual allegations as true and construe them in the light most favorable to Plaintiffs. *Cedars Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007). The Court does not weigh evidence or make credibility determinations.  *Acosta v. City of Costa Mesa,* 718 F.3d 800, 828 (9th Cir. 2013). The well-pleaded facts must do more than permit the Court to infer "the mere possibility of misconduct"; they must show that the pleader is entitled to relief. *Ashcroft*

1   *v. Iqbal*, 556 U.S. 662, 679 (2009). To defeat the motions to dismiss, the factual allegations

2   need not be detailed, but they must be sufficient to "raise a right to relief above the

3   speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

4       In assessing the adequacy of a complaint, the Court must look at the complaint itself,

5   and not to explanations provided in the opposition.  New or expanded allegations in

6   opposition to a motion to dismiss are considered when deciding whether to grant leave to

7   amend, but are not considered when ruling on a 12(b)(6) motion.  *See Schneider v. Cal.*

8   *Dep't of Corr. & Rehab*., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).  *See also Broam v. Bogan*,

9   320 F.3d 1023, 1026 n.2 (9th Cir. 2003).

10       When a complaint is dismissed for failure to state a claim, ordinarily leave to amend

11   is granted.  *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003)

12   (per curiam).  But leave to amend will be denied where it is clear the complaint cannot be

13   saved by amendment.  *Id*.

14   **Choice of Law**

15       To a great extent the briefing focuses on which law applies.  The parties suggest that

16   either California or Florida law applies.  The dispute is particularly sharp because the

17   applicable law concerning statutes of limitation and tolling could render Plaintiffs' claims

18   untimely.

19       In the earlier two cases, jurisdiction was premised on the existence of a federal

20   question, *i.e.*, application of the Federal Arbitration Act.  In this case, jurisdiction is premised

21   on both diversity and the Edge Act, which affects choice of law  *Compare Huynh*, 465 F.3d

22   at 997 (holding that where jurisdiction was based on Edge Act, federal common law —

23   including choice of law rules — applies) *with Fields v. Legacy Health Sys*., 413 F.3d 943,

24   950 (9th Cir. 2005) ("Federal courts sitting in diversity must apply the forum state's choice

25   of law rules to determine the controlling substantive law.") Neither party suggests that federal

26   substantive common law or choice-of-law provisions apply.  Rather, the parties represent the

27   choice as being between California and Florida law only.

28   / / /

Defendants point out that Plaintiffs' investments were made through their accounts at SCBI in Miami, which is where SCBI has its headquarters.  They argue that Plaintiffs' account agreements include Florida choice-of-law provisions. The documents they do attach don't show a clear Florida choice-of-law provision applies to all claims, though.  Exhibit A, S&A's application, and Exhibit B, Harley's application, do include Florida choice-of-law provisions.  (Docket nos. 12-4 at 4, ¶ 11; 12-5 at 6, ¶ 9.)  The applications incorporate the Rules and Regulations Governing Accounts ("RRGA"), which include a choice-of-law provision for either Florida law or applicable federal law. But the briefing doesn't make clear why all the claims arising in connection with the RRGAs are governed by Florida law; all the RRGA's provisions say is that the RRGAs are to be "governed by and construed in accordance" with either Florida or federal law.  (Docket nos. 12-6 at 12, ¶ 49; 12-7 at 12, ¶ 51; 12-8 at 24, § 49.)  Defendants also attach a Nondiscretionary Investment Services Agreement ("NISA"), which includes a Florida choice-of-law provision.  They say this applies to Harley; but they don't claim it applies to S&A.  (*See* Docket no. 121 at 14:1–4.)[1]  No documents show the Gavaldons' own claims are governed by Florida law, however.  And the briefing does not address whether claims against Defendants other than SCBI are subject to a Florida choice-of-law provision.

Defendants argue that the federal court assigned to multi-district litigation of related claims against SCBI determined that Florida law applied.  *See Anwar v. Fairfield Greenwich Ltd.*, 745 F. Supp. 2d 360, 369 (S.D.N.Y. 2010).  It isn't clear why the Court should follow that precedent, though, for two reasons.  First, that court held a particular plaintiff's claims were governed by the NISA, which she executed; here, Defendants have yet to establish either that Plaintiffs all executed the NISA or that it governs Plaintiffs' and Defendants'

/ / /

/ / /

---

[1]  The supporting declaration merely identifies the NISA as being the American Express Bank International NISA, without naming the other signatories.  (Docket no. 12-2 at 2, ¶ 8.) The NISA itself does not identify which account holder is signing it, or who signed it on the account holder's behalf.

relationship.[2]   Second, the opinion noted that the plaintiff had made "no persuasive argument" why the choice of law provision should not apply.  It isn't clear that plaintiff made the same arguments that Plaintiffs are making here.  Third, for reasons not stated in documents before the Court, that court later reconsidered its decision and reinstated a number of the plaintiff's claims. *Anwar v. Fairfield Greenwich Ltd.*, 745 F. Supp. 2d 384, 384 (S.D.N.Y. 2010).

Plaintiffs argue for the application of California substantive law, but argue that either California or Florida law would lead to the same outcome. They deny Defendants' contention that they transacted business in Florida, and argue they did business with SCBI in San Diego.

Under California law, choice-of-law provisions are enforceable as long as the chosen state has a substantial relationship to the parties' transaction or there is another reasonable basis for the parties' choice, and the chosen state's law is not contrary to a fundamental policy of California law.  *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal.4th 459, 466 (1992). If these requirements are met and there is still a conflict between California and foreign law, the Court must then determine whether California has a materially greater interest in the determination of the issue. *Washington Mutual Bank, FA v. Superior Court*, 24 Cal.4th 906, 917 (2001).

The choice of law provision is considered reasonable if one of the parties lives in the chosen state.  *Hughes Electronics Corp. v. Citibank Delaware*, 120 Cal. App. 4th 251, 258 (Cal. App. 2 Dist. 2004).  Here, three Defendants are alleged to be Florida citizens, and one a California citizen. (Notice of Removal, Docket no. 1, ¶ 13.) Plaintiffs are Mexican nationals and Cayman Island entities.  Although Plaintiffs argue the agreements were entered into in San Diego and they spend a substantial amount of time in California, they are not permanent California residents.  *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 594 (9th Cir. 2012)

---

[2] In an earlier related case, Plaintiffs argued that a later account agreement replaced the American Express Bank International brokerage agreement.  (*See* case 12cv3016, Docket no. 1, ¶ 23.) That agreement, apparently, was the StanChart Securities International Brokerage Client Agreement (Case 12cv301, Docket no. 9-4 at 46–52.)

1  (citing *Edgar v. MITE Corp.*, 457 U.S. 624, 644 (1982) (". . . California's interest in applying
2  its law to residents of foreign states is attenuated.") Under the circumstances, choice of
3  Florida law is reasonable.

4  Plaintiffs identify as public policy concerns California law requiring enforcement of
5  arbitration agreements and the availability of equitable tolling.  The former is not at issue
6  here, however, and Plaintiffs have not identified any authority for the principle that the
7  availability of equitable tolling is fundamental policy in California.

8  Even if principles of equitable tolling were a fundamental policy in California, the Court
9  would then determine whether California has a materially greater interest in the way this
10  case is adjudicated.  *See Washington Mutual*, 24 Cal.4th at 917.  This case's only major
11  connections to California are: 1) one Defendant, Luisa Serena, lives here; 2) Plaintiffs allege
12  they did business with Defendants' San Diego office; and 3) the Gavaldons spend a
13  substantial amount of time in California.  By contrast, three Defendants (including the two
14  financial institutions) are located in Florida.  California does not appear to have a materially
15  greater interest than Florida in this litigation.

16  For these reasons, the Court concludes that under California law, a choice-of-law
17  provision requiring the application of Florida law is enforceable in this case.  That being said,
18  Defendants have not shown that the provision applies to each party, because it is not clear
19  which parties agreed to it. The question of whether different states' laws could apply to
20  different claims has not been briefed.  It may well be that Plaintiffs' claims are governed by
21  Florida substantive law, but the issue involves questions of fact that are not subject to
22  resolution on a 12(b)(6) motion.  In other words, the briefing does not show this to the degree
23  required for a motion to dismiss.

24  **Statute of Limitations and Tolling**

25  Defendants argue Plaintiffs' claims are time-barred under either Florida or California
26  law, while Plaintiffs argue they are timely under either state's law.  As noted, neither party
27  has suggested that federal common law or some other body of law ought to apply.

28  / / /

Plaintiffs have cited Fed. R. Civ. P. 15(c) and argued for application of the doctrine of relation back, and ask that their claims be deemed to relate back to their November 2010 Statement of Claim or, alternatively, to their 2012 petition to vacate.  But the doctrine applies when pleadings are amended, rather than to separate cases.  *See* Fed. R. Civ. P. 15(c)(1).  The effect of a separate pending case is governed by the law of tolling.

**Florida Statutes of Limitations**

Defendants argue that Plaintiffs' claims for negligence, gross negligence, breach of fiduciary duty, and unjust enrichment accrued no later than February, 2008.  They argue some of the claims may have accrued earlier.  Under Florida law, they argue, a 4-year statute of limitations applies to these claims.  With regard to the fraud, deceit, and negligent misrepresentation claims, Defendants argue Florida's four-year limitations period began to run no later than December, 2008, when Madoff's fraud came to light.  On November 24, 2010, Plaintiffs initiated the FINRA arbitration.   The FINRA panel issued its award on November 28, 2012 and Plaintiffs filed suit on December 19, 2012 to have that award vacated.  Judgment was entered in that suit on December 15, 2015.  Then on January 11, 2016, Plaintiffs filed their complaint in this action.

Florida's statute of limitations is unusually strict.  *See generally HCA Health Servs. of Florida, Inc. v. Hillman*, 906 So.2d 1094 (Fla. App. 2 Dist. 2004).  Under  section 95.051, Florida Statutes, only a limited number of circumstances will justify tolling.  Specifically, Section 95.051(1) enumerates eight circumstances under which a statute of limitations is tolled. With exceptions inapplicable here, Section 95.051(2) precludes the use of tolling provisions other than those listed.  Plaintiffs rely on Section 95.051(1)(g), "The pendency of any arbitral proceeding pertaining to a dispute that is the subject of the action."  Equitable estoppel may bar application of the statute of limitations in a particular situation, if the statute of limitations ran because Defendants induced Plaintiffs to allow it to run.  *See generally Major League Baseball v. Morsani*, 790 So.2d 1071 (Fla. 2001).  *See also Ryan v. Lobo De Gonzalez,* 841 So.2d 510, 524 and n.9 (Fla. App. 4 Dist. 2003) (citing with approval cases where equitable estoppel was applied).

Defendants argue that Plaintiffs should not be able to take advantage of Florida's tolling provisions because they pursued arbitration in the wrong forum. But Florida's exception merely requires that the arbitral proceeding "pertain[ ] to" the claims. While the Court confirmed the arbitration panel's "award" determining that it lacked jurisdiction over the claims, the question of jurisdiction was not a foregone conclusion. Defendants first moved to dismiss the arbitration on June 24, 2011. (*See* Case 12cv3016, Docket no. 6 at 6:1–3.) The panel itself put off the inquiry and only towards the end did it consider jurisdiction. It does not appear Plaintiffs were acting in bad faith when they sought to arbitrate.

Defendants ask the Court to construe "arbitral proceeding" narrowly, to include only the arbitration itself, and to exclude proceedings in this Court to confirm or vacate the award. In support of this, they cite Section 684.0043(1), Florida Statutes, which says that arbitral proceedings conclude with the arbitrator's award. This section deals with international commercial arbitration where the arbitration was held in Florida. *See* Section 684.0002(1) and (2). But the meaning Defendants propose appears to coincide with usage in the legal community, and Plaintiffs have not proposed another acceptable meaning. *See, e.g., Green Tree Servicing, LLC v. McLeod*, 15 So.3d 682, 692 (Fla. App. 2 Dist. 2009) (using "arbitral proceedings" to refer to proceedings before the arbitration panel); *Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr S.A.*, 377 F.3d 1164, 1171 (11th Cir. 2004) (same).

If "arbitral proceedings" refers only to the arbitration itself and not to actions to confirm or vacate the award, then under Florida law the limitations period has run. But it appears Plaintiffs may be entitled to equitable tolling under these circumstances. Case 12cv3016 was not solely Plaintiffs' doing; Defendants Stanchart Securities International, Inc. and Standard Chartered International (Americas) Ltd. brought their own motion to confirm the arbitration award. (*See* Case 12cv3016, Docket no. 6 (Answer to Complaint, and Cross-Petition to Confirm Arbitration Award).) Even assuming the litigation over confirmation or vacatur of the arbitration award does not count as part of the "arbitral proceeding" under Florida law, Defendants' own petition to confirm the arbitration award would provide a basis for equitable estoppel. In other words, Defendants' own decision to litigate their claims in

1   this Court equitably estops them from arguing that the clock was ticking during the pendency

2   of their own case.

3       With the benefit of equitable estoppel, Plaintiffs' claims would be timely as to any

4   Defendant who litigated case 12cv3016.  Three of the Defendants in this case — Standard

5   Chartered Bank International, Inc.; Carlos Maria; and Luisa Serena — were not.  Those

6   three Defendants are therefore not equitably estopped from asserting a statute of limitations

7   defense.

8       Therefore, assuming Florida law applies, Plaintiffs' claims are timely as to only

9   Stanchart Securities International, Inc.

10      **California Statute of Limitations**

11      Plaintiffs argue that, if California law applies, their claims are timely, and Defendants

12  have not adequately briefed the issue.  They merely argue in a footnote that equitable tolling

13  is unavailable because Plaintiffs have engaged in forum shopping and needless delay.  But

14  the Court cannot conclude as a matter of law that they have done either of these things.

15      The Court therefore deems this issue waived and accepts for the purpose of this

16  ruling that under California law, Plaintiffs' claims would be timely.  The question of which

17  state's law applies — Florida's or California's — does make a difference.  But because

18  factual questions prevent judgment as a matter of law, the Court cannot decide this issue

19  at this time.

20  **Failure to State a Claim**

21      Defendants' motion points out various ways the complaint does not fully meet the

22  *Twombly*/*Iqbal* pleading standard.  Bearing in mind that the case was filed in state court and

23  removed to this Court, Plaintiffs' failure to follow federal pleading standards is not surprising.

24  The Court has reviewed the complaint and agrees it fails to meet federal standards, though

25  not to the degree Defendants argue.

26      In addition, fraud claims pending in federal court, including those arising under state

27  law, must be pled with particularity as required by Fed. R. Civ. P. 9(b).  *Vess v. Ciba–Geigy*

28  *Corp. USA*, 317 F.3d 1097, 1102 (9th Cir. 2003).  This includes alleging who made various

misrepresentations, how the misrepresentations were conveyed to Defendants, and under what circumstances.  *See Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir.1998). With regard to its fraud claims, the complaint does not meet this standard.

The complaint also does not identify the parties adequately, as is required.  *See Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007) (requiring plaintiffs pleading fraud to identify defendants separately).  Instead, the complaint for the most part refers to Defendants collectively as "SCB".   Under Rule 9, the complaint must identify each Defendant's role in the alleged fraud, although it need not link each Defendant to a fraudulent statement.  *Id*. at 764.

The complaint also alleges that Defendants pushed the Gavaldons into unsuitable investments, without making clear how Defendants knew what type of investments the Gavaldons would need or why they had a duty to recommend suitable investments.  Defendants, for their part, argue they had no duty to recommend a suitable portfolio to Plaintiffs, because the account was nondiscretionary.  They only cite Florida law for this proposition.

Defendants contend that as part of their fraud claim, Plaintiffs must plead facts plausibly suggesting scienter.  In response, Plaintiffs point to allegations that they have alleged Defendants received undisclosed payments that Defendants themselves described as kickbacks.  (*See* Complaint, ¶¶ 69, 73.)  The problem is that the allegations refer to Defendants collectively, instead of alleging who received the payments and who characterized them as kickbacks.  The context in which they were described as kickbacks should also be alleged, in order to show that the payments actually were kickbacks and not permitted and appropriate fees of some kind.

They have also alleged various examples of Defendants concealing or misrepresenting facts, and have alleged Defendants did this in order to induce Plaintiffs to invest their money. (*Id*., ¶ 141.) To the extent they are required to plead Defendants' mental states, they may do so generally.  *See* Rule 9(b).  If Plaintiffs are able to allege these facts
/ / /

with respect to individual Defendants, as well as alleging facts plausibly suggesting a common fraudulent purpose, they may be able to meet the pleading standard.

Claims other than fraud are not subject to the Rule 9(b) pleading standard, and Defendants raise other arguments concerning these claims. They contend that the unjust enrichment claim fails as a matter of law, because it can proceed only if the subject matter of the claim is not covered by a valid contract. *See In re Managed Care Litig.*, 185 F. Supp.2d 1310, 1337 (S.D. Fla. 2002). But Plaintiffs argue their unjust enrichment claims arise from fees not authorized by contract, including fees from the sale of a substantial life insurance policy. The briefing does not address whether the investment agreements included an agreement concerning the sale of life insurance. Because of this, the Court cannot decide this issue as a matter of law.

With regard to duty to recommend suitable investments, Defendants agree that even under Florida law they have a limited duty to nondiscretionary account holders. These include, among other things, a duty to be informed about the price, nature, and financial prognosis of an investment before recommending it, informing customers of the risks involved in transacting the security, refraining from self-dealing, and not misrepresenting material facts. *See First Union Brokerage Disc. Servs., Inc. v. Milos*, 744 F. Supp0. 1145, 1156 (S.D. Fla. 1990). They contend there is no duty under Florida law to recommend a suitable diversified investment portfolio. And they argue the complaint fails to allege any investment losses.

Plaintiffs, however, argue that Defendants assumed fiduciary obligations, which included obligations to make suitable recommendations both as to individual investments and as to the portfolio. The complaint alleges various statements to this effect that Defendants made, but does not identify which Defendants made them or in what context. Assuming they can point to an agreement under which Defendants assumed a fiduciary obligation, or some other obligation to make suitable recommendations, they would be on firmer ground. Construing the allegations in the light most favorable to Plaintiffs, the complaint does allege that Defendants recommended very risky investments they knew were

unsuitable for Defendants, who they knew had a low tolerance for risk.  (Complaint, ¶¶ 23–25, 28.) The complaint also alleges that this resulted in foreseeable losses; when the Madoff investments had been exposed, Plaintiffs had to liquidate the equities in their account at a loss. (*Id*., ¶ 27.) Plaintiffs also allege the unsuitability of various individual investments Defendants recommended.   (*Id*., ¶¶ 30–44.)   As part of this, they allege various misrepresentations, including the risk level. (*Id*.) They also alleged that Defendants urged them to buy securities on margin, an unsuitable strategy which resulted in their becoming highly leveraged and paying high interest.  (*Id*. at 45–49.)   Essentially, they allege Defendants pretended to make recommendations in Plaintiffs' interest, even though they were in fact encouraging investments solely to generate fees. (*Id*., ¶ 42.) They also allege Defendants urged them to purchase an expensive and unsuitable life insurance policy, merely to generate more fees. (*Id*., ¶¶ 51–52.) The complaint also focuses extensively on Defendants' allegedly reckless or fraudulent recommendation of Madoff securities, mentioning many of the same misrepresentations. (*Id*., ¶¶ 54–94.) Plaintiffs alleged they lost $2.4 million in Madoff securities as a result. (*Id*., ¶ 54.)

Construing the allegations in the light most favorable to Plaintiffs, as the Court must do at this stage, the complaint alleges affirmative misrepresentations and deliberately misleading statements by Defendants collectively, and resulting losses.  The major defect is that the allegations are made against Defendants as a group.  To the extent Plaintiffs' claims are based on a fraud theory, they also fail to plead facts with particularity as required by Rule 9(b).  But to the extent these allegations are intended to support a negligent misrepresentation or breach of fiduciary duty claim, they need not be pled with the same degree of particularity.

This analysis of the complaint's allegations has necessarily been fairly broad, because the complaint and motion are both quite detailed.  The bottom line, though, is that the complaint is deficient as pled, for the reasons set forth above, and must be dismissed. Because it is not clear the complaint cannot be saved by amendment, Plaintiffs will be given leave to amend.

16cv590

**Conclusion and Order**

Defendants' motion to dismiss is **GRANTED IN PART AND DENIED IN PART**.  The choice of law issue involves resolution of factual questions not appropriate at this stage of litigation. And in any event, this issue has not been briefed sufficiently to allow the Court to make a determination as a matter of law.  Because the complaint does not meet the *Twombly*/*Iqbal* pleading standard, and because its fraud claims are not pled with the particularity required under Rule 9(b), the complaint is **DISMISSED WITH LEAVE TO AMEND**.  No later than 28 days from the date this order is issued, Plaintiffs may file an amended complaint that remedies the defects this order has identified.

**IT IS SO ORDERED**.

DATED:  February 28, 2017

**HONORABLE LARRY ALAN BURNS**
United States District Judge

16cv590