UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERGIO GAVALDON, et al., <br><br> Plaintiffs, <br><br> v. <br><br> STANCHART SECURITIES INTERNATIONAL, INC., et al. <br><br> Defendants. | Case No.: 16cv590-LAB (MDD) <br><br> **ORDER UPDATING CASE NAME; AND** <br><br> **ORDER GRANTING IN PART MOTION TO DISMISS** <br><br> **[DOCKET NUMBER 24.]** |

**Order Updating Caption**

This is an action by Plaintiffs Sergio and Angelica Gavaldon, S&A Investments, Inc. (a Cayman Island Trust Company), and Harley Invest Ltd. (also a Cayman Island Trust Company), against Defendants Stanchart Securities International, Inc. and Standard Chartered Bank International (Americas) Ltd. (aka Standard Chartered Bank International). Several other Defendants were dropped when Plaintiffs amended their complaint. These include Standard Chartered Bank International, Inc., which appeared as the first named Defendant in the caption of earlier orders. The caption is deemed to be updated to omit the Defendants who were dropped. The short form of this case's name will henceforth be Gavaldon v. Standard Chartered Bank International (Americas) Ltd.

**Procedural History**

Plaintiffs initially filed their complaint in state court, but Defendants removed it, citing diversity jurisdiction and the Edge Act, 12 U.S.C. § 632. Defendants moved to dismiss for failure to state a claim, under Fed. R. Civ. P. 12(b)(6). The Court granted that motion in part, identifying particular deficiencies in the complaint, giving Plaintiffs leave to amend. (Docket no. 6.)  That order held that the choice of law issue, *i.e.*, whether California or Florida law governs these claims, involved resolution of factual questions not appropriate at this stage of litigation. Plaintiffs then filed an amended complaint ("FAC"), in an effort to correct the defects the Court's order identified.   Defendants again moved to dismiss under Rule 12(b)(6). That motion is now fully briefed and ready for disposition.

The parties are familiar with the procedural history of this case and two related cases, which is also set forth in the Court's earlier order dismissing the initial complaint.  That history and the Court's rulings in that order are not repeated here, except as necessary for discussion.

**Legal Standards**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In ruling on a motion to dismiss, the Court accepts all allegations of material fact in the complaint as true and construes them in the light most favorable to the non-moving party. *Cedars-Sinai Medical Center v. National League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007).  The Court may also consider documents attached to the complaint or on which the complaint necessarily relies. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).

A complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" and its factual allegations must "raise the right to relief above a speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must contain enough factual allegations that, accepted as

16cv590-LAB (MDD)

true, would state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009). The Court need not accept conclusions of law as true, however, even if cast as factual allegations. *Id*. at 678. A claim may be dismissed under Rule 12(b)(6) either for lack of a cognizable legal theory or failure to allege sufficient facts to support a cognizable legal theory. *Taylor v. Yee*, 780 F.3d 928, 935 (9th Cir. 2015).

Under Fed. R. Civ. P. 9(b), claims that sound in fraud or mistake must be pled with particularity. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (holding that nondisclosure claims sound in fraud and are subject to Rule 9(b)). The complaint must allege the "who, what, when, where, and how" of the charged misconduct, and must identify ""what is false or misleading about a statement, and why it is false." *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)). In a limited class of cases, Rule 9(b)'s pleading requirements may be relaxed pending discovery, if the evidence needed to make those allegations is within a defendant's exclusive possession. *Ebeid*, 616 F.3d at 999.

A complaint may be dismissed for failure to state a claim if an affirmative defense such as the running of the statute of limitations is apparent on the face of the complaint. *See Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980). A plaintiff is generally not obligated to plead facts to negate anticipated affirmative defenses. *United States v. McGee*, 993 F.2d 184, 187 (9th Cir. 1993).

Under the *Twombly/Iqbal* pleading standards, lumping defendants together in a conclusory manner is insufficient. A claim may be brought against defendants jointly or collectively, provided sufficient factual allegations plausibly show why this is so. *See In re Fresh & Process Potatoes Antitrust Litig.*, 834 F. Supp. 2d 1141, 1164 (D. Idaho 2011). This is particularly true with regard to claims subject to Rule 9(b)'s pleading standard; where such a claim involves multiple defendants, a plaintiff must, at a minimum, identify the role of each defendant in the alleged

fraudulent scheme. *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir.1989).

Ordinarily, leave to amend will be granted, unless it is clear that defects in the complaint could not be cured by amendment. *See Somers v. Apple, Inc.*, 729 F.3d 953, 960 (9th Cir. 2013). That being said, a plaintiff is not entitled to unlimited chances to amend. *See Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1072 (9th Cir. 2008). When the Court has previously pointed out pleading defects and the plaintiff has failed to correct them by amendment, the Court may assume that the plaintiff cannot successfully amend. *See Crawford v. Beard*, 2017 WL 4354898, slip op. at *5 (N.D. Cal., Sept. 29, 2017) (citing *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011)).

**Discussion**

The Court's earlier order focused on two defects: failing to plead fraud with particularity, and grouping the Defendants together so that it was unclear which Defendant did what. (Docket no. 20 at 9:26–10:9.) It also pointed out that the *Twombly/Iqbal* standard was generally not met—unsurprisingly, because the complaint had been filed in state court and never amended to comply with federal pleading standards.

The complaint in this case was filed on January 11, 2016. The Court also took into account the statute of limitations defense that Defendants' motion had raised. Because the complaint lacked specificity, the Court was unable to determine whether tolling was available as to some claims.

The FAC adds a great deal of information, and is over twice as long as the original complaint. It brings the same six claims. It also omits two individual Defendants, and substitutes one, leaving Standard Chartered Bank International (Americas) Ltd. ("SCBI") and StanChart Securities International, Inc. ("Stanchart") as the two Defendants.

/ / /

4

**Party Allegations**

The FAC treats S&A and Harley as extensions of Sergio and Angelica Gavaldon and, for purposes of this litigation, the same. (FAC, ¶ 19 (defining all four Plaintiffs as "the Gavaldons").) The Gavaldons opened a brokerage account in the 1980s with American Express Bank International, which is alleged to be the same entity as SCBI; the only difference is the name change. (*Id.*, ¶ 20–21, 27–28.) SCBI is alleged to have its headquarters in New York City (*id.*, ¶ 27), and to be a wholly-owned subsidiary of a third entity, Standard Chartered Bank. (*Id.*, ¶ 29.)

In February of 2008, StanChart became a licensed securities broker-dealer and a FINRA member. (FAC, ¶ 31.) StanChart is a Florida corporation whose ownership is not alleged.[1] On October 1, 2008, SCBI[2] announced that the Gavaldons' assets would be transferred to StanChart as of November 7. (FAC, ¶31.) Although the FAC calls this the "Transfer Date," (*id.*, ¶ 31), it also alleges the assets were not transferred until "approximately December 2008 . . . ." (*Id.*, ¶ 30.) The brokerage agreement apparently became retroactively as of November 5, 2008. (*Id.*, ¶ 33.) While there is some blurring of dates here, it appears the FAC

---

[1] In the second of the three actions, StanChart was allegedly a second corporation created by Standard Chartered, Ltd. (Case no. 12cv3016, *Gavaldon v. Stanchart*, Docket no. 1 (Petition), ¶ 15.) The corporate relationships are not particularly clear, and the allegations appear somewhat contradictory from one case to another, and even within cases. The pleadings consistently seem to be alleging, however, that there is some kind of historical connection between the entities, and that the two organizations at times cooperated. For example, some SCBI employees transferred to StanChart. (FAC, ¶¶ 32, 36.)

[2] The FAC uses the defined term "Standard Chartered" to refer to both entities collectively. (FAC, ¶ 1.) But because the Gavaldons had their accounts at SCBI, SCBI would have been the one to send out a notice. (*See id.*, ¶ 26 (explaining how to interpret the FAC's use of "SCB" collectively).) Later, however, the FAC says the notice was sent out by "SCB's parent," presumably Standard Chartered Bank. (*Id.*, ¶ 30.)

16cv590-LAB (MDD)

1 is alleging that the Gavaldons' account was held by SCBI until either November or

2 December of 2008, at which time the assets were transferred to StanChart.

3 In spite of the Court's previous warning about grouping the Defendants

4 together, the FAC refers to SCBI and StanChart collectively as "Standard

5 Chartered," "SCB," or "the SCB Defendants". (FAC, ¶ 1.) Throughout the FAC,

6 Plaintiffs say they intend the collective term "SCB" to "refer to that particular entity

7 which maintained the Gavaldons' assets at the particular described time, including

8 predecessor entities." (FAC, ¶ 26.) "Predecessor entities" apparently is a

9 reference to SCBI's predecessor entities; no factual allegations suggest that

10 StanChart assumed the liability of any entities where the Gavaldons had previously

11 held accounts.

12 At times, it is clear which of the two Defendants the FAC is referring to,

13 largely because of specifically mentioned dates or the time frame of events. At

14 others, however, it is virtually impossible. For example, the FAC alleges that "SCB"

15 advised them to create S&A and Harley, and to allow "SCB" to act as their trustees.

16 (FAC, ¶ 7.) Allegations that follow show this must have been SCBI. (Id., ¶¶ 8–9.)

17 The FAC also alleges that SCB had improperly advised the Gavaldons to borrow

18 money to buy an unnecessary $10 million life insurance policy in order to generate

19 fees for SCB. (*Id.*, ¶ 192–206.) Based on the dates alleged, that was the work of

20 SCBI, not StanChart. The FAC also alleges that "SCB" maintained an office in

21 San Diego, and interacted with the Gavaldons there. (*Id.*, ¶¶ 36–37.) Allegations

22 that immediately follow this suggest it refers to both entities in succession—*i.e.*,

23 that SCBI maintained an office in San Diego, which was taken over by StanChart.

24 But in large swaths of the FAC, the reference is entirely unclear. It could be

25 referring to either one, or both. The least clear sections are those that set the

26 stage for more specific factual allegations, by alleging facts that purport to show

27 SCB's assumption of certain duties, what SCB knew, its general representations

28 to the Gavaldons concerning its role and their relationship, and so on. For example,

6

Paragraphs 42–71 are alleged to show that "SCB" had or undertook certain duties, ranging from fiduciary obligations to compliance with suitability rules. But only a few of these paragraphs 50–51, 61, 63–64 (referring to American Express Private Bank) include any time reference. Those that do, refer to times during which the Gavaldons' account was at SCBI. (*See also* FAC, ¶¶ 1–5, 12–18, 40 (general allegations omitting time references).) But without something more, it is impossible to say whether the FAC is alleging that SCBI would be liable because of what it knew, said, or did; or whether Plaintiffs are imputing some of StanChart's knowledge, representations, obligations, or duties to SCBI after the fact. In other words, with regard to the representations, knowledge, fiduciary duties, and other obligations of "SCB," the FAC may be treating the two Defendants as one without having alleged facts to support such an inference.

Paragraphs 72 through 309 set forth factual allegations concerning what SCB should have done and what it did or failed to do. To the extent they include dates, so as to identify whether they are making allegations against SCBI or StanChart, all relevant dates during which the FAC alleges wrongdoing are pre-Transfer, *i.e.*, during the time the Gavaldons' account was at SCBI. The few dates that are near or after the Transfer say nothing about any malfeasance by StanChart. Those allegations only suggest that StanChart was left holding the bag after the Transfer.

Paragraphs72–94 are alleged to show that SCB knew the Gavaldons' investment needs, knew the Gavaldons were relying on it for investment advice, and gave bad advice. The only paragraphs that refer to any time frame are 80–81, 85–86, and 92, all of which are pre-Transfer, which means they must refer to SCBI.

Paragraphs 95–104 are alleged to show that SCB transformed the Gavaldons' account over time from a portfolio of appropriate investments to one of unsuitable high-risk investments. Only a few paragraphs include any references to

16cv590-LAB (MDD)

years or months. (FAC, ¶¶ 97, 104). These paragraphs point only to SCBI, not StanChart, and suggest that by the end of 2008, the damage was done.

Paragraphs 106–149 allege SCB's poor recommendations that the Gavaldons invest heavily in a global emerging market fund, GEMSTB. Of the allegations that include any reference to time, all point to the damage being done and irreversible by the time StanChart took over.  (FAC, ¶¶ 106–07, 109, 111, 114, 119, 121, 128, 131–49.)  For example, GEMSTB began to decline during the summer of 2008, and froze redemptions on October 27–28, 2008, resulting in a total decline in the fund of about 40% and the Gavaldons' loss of over $1.2 million. (*Id.*, ¶¶ 132, 135, 139, 142.)

Paragraphs 150–61 allege facts to support claims of misrepresentations regarding risky investments in hedge funds.  Only three paragraphs mention any dates. (FAC, ¶¶ 156–57 (2006), 160 (2007)).

Paragraphs 162 through 177 include allegations regarding alternative investments. As before, this section suggests that the allegations pertain to SCBI; by the time StanChart took over, the damage was done. (FAC, ¶¶ 163, 167–68; 169, 177.)

Paragraphs 178–190 include allegations concerning SCB's advice that the Gavaldons buy on margin.  This section, too, suggests only that SCBI was involved in causing any loss. (FAC, ¶¶ 187–89, 190.)

Paragraph 207 suggests that the preceding paragraphs (beginning with ¶72) All refer to the condition of the Gavaldons' portfolio as of 2008, *i.e.*, while their account was with SCBI and before the Transfer Date.  In other words, the FAC seems to be laying all of the blame at SCBI's feet.

Paragraphs 208–309 refer to SCB's alleged recommendation of Fairfield Sentry investments associated with the Bernie Madoff scandal, without performing due diligence.  This is by far the largest set of allegations, and appears to form the heart of Plaintiffs' claims.  Paragraph 332 alleges that Madoff was exposed in

1    December of 2008, and no other post-Transfer date is alleged.  Thus, it appears

2    the FAC is also blaming SCBI for this, and not StanChart.

3          The allegations leave open the possibility that SCBI or its parent arranged

4    for the creation of StanChart and transfer of accounts to it in an effort to offload

5    some of its liability. But facts supporting such an inference are not alleged, and in

6    any event that would not show StanChart was liable in any way. There are no

7    allegations of conspiracy or common purpose between SCBI and StanChart.

8          In short, these preliminary allegations are all too vague to show what liability

9    if any StanChart has for any of the Gavaldons' claims.

10         **Statute of Limitations**

11         As noted, a complaint can only be dismissed as time-barred if the running of

12   the statute of limitations is apparent on the face of the complaint.  The Court cannot

13   resolve disputed issues of fact at the pleading stage.

14         Because choice of law involves some questions of fact, it appears that issue

15   cannot be decided at this stage. Because the facts suggest only that California or

16   Florida law might apply, the Court's working assumption will be that one of these

17   two states' laws supplies the statute of limitations.

18         Regardless of whether Florida or California law applies, Defendants argue

19   that all claims except those arising from the Madoff/Sentry claims, are time-barred.

20   The FAC alleges that the Gavaldons were diligently seeking an adjudication of

21   their claims as of 2010, based on their filing of a statement of claim with FINRA "in

22   or about November 2010." (FAC, ¶ 392.)

23         Plaintiffs' claims appear to have accrued from around early 2007 for the

24   insurance-based claim (FAC, ¶ 204) to December of 2008 for the Madoff/Sentry

25   claims[3] (*Id.*, ¶ 332.)

26

27

28   [3] Plaintiffs' opposition suggests that they were not told that the Sentry
     investments in their portfolio were linked to Madoff until somewhat later. (FAC,

In this case, it is clear no limitations period is longer than four years, and no cause of action accrues later than the date a claim could have been discovered with reasonable diligence. Some limitations periods are shorter. As the Court noted earlier, Florida's statute of limitations is unusually strict, and does not include a delayed discovery rule for non-fraud claims.

Defendants have briefed the statute of limitations issue. (Mot. to Dismiss, App. A.) Under Florida law, fraud-based claims must be brought within four years of the time the facts giving rise to the claim were discovered, or should have been discovered with the exercise of due diligence. Fla. Stat. §§ 95.031(2)(a); 95.11(3)(j). Other claims must be brought within four years of the time the last element constituting the cause of action occurs. Fla. Stat. §§ 95.031, 95.11(3)(1), (o), (p).

Under California law, claims sounding in fraud or unjust enrichment must be brought within three years of discovery of the claim, or possession of information that would put a reasonable person on inquiry notice. Cal. Code Civ. Proc. § 338(d) Claims for breach of fiduciary duty not sounding in fraud must be brought within four years of discovery. *See McFall v. Stacy & Witbeck, Inc.*, 2016 WL 6248882 at \*2 (N.D. Cal., Oct. 26, 2016). Negligence claims not sounding in fraud must be brought within two years of the time the plaintiff sustains damage and discovers, or should discover the negligence. *Cyr v. McGovran*, 206 Cal. App. 4th 645, 651–52 (Cal. App. 2 Dist. 2012).

Plaintiffs agree that four of their six claims sound in fraud; they contend that their breach of fiduciary duty and negligence claims do not.

---

¶ 406.) But the FAC makes clear they knew the name of their investment. Given the widespread coverage of the Madoff scandal, a reasonable person likely would have been on inquiry notice some time between December 11, 2008 and early January, 2009.

16cv590-LAB (MDD)

1    The Court's previous order (*see* Docket no. 20, at 9:3–9) addressed statutory

2    tolling and concluded that, assuming Florida law applies, with the benefit of

3    equitable estoppel Plaintiffs' claims are timely as to any Defendant who litigated

4    the related case, 12cv3016, *Gavaldon v. StanChart.*  Both StanChart and SCBI

5    were Defendants in that case.

6    Under California law, some of Plaintiffs' negligence claims may be time-

7    barred. But because the choice of law issue involves matters of disputed fact, and

8    claims of equitable tolling potentially do as well, the Court cannot say the running

9    of the statute of limitations is evident on the face of the FAC.

10   **Conclusion and Order**

11   The FAC's allegations are insufficient to state a claim against Defendants for

12   any of the six claims. They do not adequately identify which of the two Defendants

13   is responsible for each action. This defect is fatal to all their claims, and must be

14   corrected if the case is to proceed. Plaintiffs may be able to correct this by simply

15   dropping claims against StanChart; their allegations do not suggest StanChart had

16   anything to do with causing their losses anyway. But if they decide to keep

17   StanChart in as a Defendant, they either must differentiate between the two in their

18   allegations. If they fail to do this, they should expect that leave to amend will be

19   denied.

20   Even assuming all allegations of wrongdoing apply to SCBI, the allegations

21   as to claims sounding in fraud are, for the most part, missing the required "who,

22   what, when, where, and how." (*See, e.g.*, FAC, ¶ 34 (alleging that various people

23   communicated with either the Gavaldons or their son Angel Gavaldon). In

24   particular, the missing "who" and "where" are sorely missing, even when it is likely

25   Plaintiffs have access to that information.  Merely being told that someone

26   connected with SCBI made particular representations or that SCBI made certain

27   recommendations over a span of time is not enough to fairly identify them. Nor

28   does it help establish Plaintiffs' contention that they conducted all business with

1  either or both Defendants in San Diego. The "when" is sometimes alleged and
2  sometimes not, but to establish fraud it is crucial that Plaintiffs clearly allege facts
3  showing that SCBI knew at the time that what it was saying to the Gavaldons was
4  false, misleading, or unreliable.

5     Facts attempting to establish that SCBI had a fiduciary duty to the Gavaldons
6  never adequately specify which Defendant they refer to. They are also too
7  conclusory and short on factual detail. In other words, it is not at all clear that SCBI
8  had any fiduciary duties towards the Gavaldons, or if it did, why it did.

9     Assuming Plaintiffs can amend to correct these defects, there are some
10  lesser, but still important, defects they should address as well. References to trailer
11  fees are not sufficient to show that they were kickbacks. And to the extent possible,
12  Plaintiffs should allege the extent to which their damages were caused by
13  Defendants' wrongful acts or omissions, rather than the financial crisis generally.
14  To the extent possible, they should also plead facts to support those allegations.
15  The fact that the Gavaldons lost money during that crisis does not, by itself, show
16  that Defendants are responsible.

17     The FAC is **DISMISSED WITHOUT PREJUDICE** for failure to state a claim.
18  If Plaintiffs believe they can successfully amend to cure the defects this order has
19  identified they should file an *ex parte* motion for leave to amend, attaching their
20  proposed third amended complaint as an exhibit, and showing by redline or
21  otherwise what changes they have made.  Any such motion for leave to amend
22  should be filed within **21 calendar days of the day this order is issued**, and
23  should not exceed fifteen pages (not counting appended material). If Plaintiffs file
24  a motion for leave to amend, Defendants within **14 calendar days of Plaintiffs'**
25  **filing date** may file an opposition also not to exceed fifteen pages.
26  / / /
27  / / /
28  / / /

The Court is willing to resolve the choice of law issue if the parties consent to a hearing to resolve disputed facts; otherwise, the issue will have to be resolved at a later stage.

**IT IS SO ORDERED**.

Dated:  March 26, 2018

_____
Hon. Larry Alan Burns
United States District Judge

16cv590-LAB (MDD)